OPINION
{¶ 1} Appellant, Stanley T. Smith, appeals from the judgment entry of the Ashtabula County Common Pleas Court sentencing him to prison on various drug trafficking convictions. His appeal raises issues regarding speedy trial, ineffective assistance of counsel, and sentencing. For the reasons herein, the judgment of the trial court is affirmed in part, reversed in part, and remanded.
 {¶ 2} On November 15, 2002, a search warrant was executed on appellant's residence. Officers for the Trumbull, Ashtabula and Geauga Law Enforcement Task Force ("T.A.G.") conducted the search and recovered various contraband items which they seized pursuant to the warrant. Among the items seized and contained in the inventory returned by T.A.G. officers were drug paraphernalia items, marijuana plants, and the following:
 {¶ 3} "41. One grocery bag containing, five lightblubs [sic] altered to be used to smkoe [sic] methamphetamine, two mini sip-lok [sic] bags with residue, one pill inside plastic bag, one sandwich baggie with residue, five glass smoking tubes three mini sip-lok [sic] bags, one glass vile, one small plastic container with residue, northeast bedroom.
 {¶ 4} "* * *
 {¶ 5} "45. Six twelve packs of Sudafed tablets, four twenty four packs of tripolidine HCI tablets, three twelve packs of pseudoephedine tablets, kitchen.
 {¶ 6} "* * *
 {¶ 7} "47. Nineteen white pills, living room."
 {¶ 8} On November 18, 2002, appellant was charged in two separate criminal cases in the Ashtabula County Court, Eastern Division. The cases related to the items seized in the search conducted on November 15, 2002. In case number 2002-CRA5-84, appellant was charged with felony drug possession, to wit, methamphetamine, in violation of R.C. 2925.11(A) and (C)(1), a felony of the fifth degree. In case number 2002-CRB-585, appellant was charged with possession of drug paraphernalia, to wit, marijuana pipes, bongs, scales, altered light bulbs, and glassware, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree; and drug possession, to wit, marijuana, in violation of R.C. 2925.11(A) and (C)(3)(a), a minor misdemeanor.
 {¶ 9} On November 25, 2002, appellant changed his plea of "not guilty" in both pending cases. In case number 2002-CRA-584, appellant entered a plea of "guilty" to a misdemeanor charge of attempted drug possession. This misdemeanor charge was substituted for the felony drug possession charge, which was dismissed. In case number 2002-CRB-585, appellant entered a plea of "guilty" to the complaint as charged. In the former case, he was sentenced to jail for one hundred eighty days, one hundred fifty of which was suspended, and placed on probation for two years. In the latter case, he was ordered to pay fines and costs, and his driver's license was suspended for one year.
 {¶ 10} On May 9, 2003, appellant was indicted by the Ashtabula County Grand Jury on seven counts resulting from controlled drug buys set up by T.A.G. The buys in question occurred on September 18, 2002, October 3, 2002, October 10, 2002, and November 13, 2002 respectively. Count 1 charged him with trafficking in drugs, to wit, 1.44 grams of methamphetamine, a controlled substance, in violation of R.C. 2925.03, a felony of the fourth degree. Counts 2 and 3 charged him with trafficking in hydrocodone, a controlled substance, in two different amounts on two different days, in violation of R.C. 2925.03, felonies of the fourth degree. Count 4 charged him with trafficking in marijuana, in violation of R.C. 2925.03, a felony of the fifth degree. Counts 5 and 6 charged him with trafficking in methamphetamine, in two different amounts and two different days, in violation of R.C. 2925.03, felonies of the fourth degree. Count 7 charged him with trafficking in methamphetamine, in an amount greater than the bulk amount, in violation of R.C. 2925.03, a felony of the third degree. Appellant was arrested pursuant to the indictment on August 15, 2003. He spent the next six days in jail and was arraigned on August 21, 2003.
 {¶ 11} On October 22, 2003, appellant filed discovery motions upon which the trial court ruled on April 13, 2004. On December 3, 2003, appellant filed a motion to continue the trial. That motion contained a waiver of his rights to a speedy trial. Again, on March 12, 2004, appellant filed a second motion to continue the trial, which likewise contained a waiver of his speedy trial rights. Appellant filed a third waiver of time limits on June 15, 2004. On August 10, 2004, the case was tried to a jury.[1]
 {¶ 12} At trial, two T.A.G. agents testified. Detective Scott Daniels ("Daniels"), who was employed by the Ashtabula County Sheriff's Department, and assigned to T.A.G., testified that he was the agent in charge of setting up the controlled buys between the confidential informant, John Knight ("Knight"), and appellant. After each controlled buy, the methamphetamine and/or vicodin pills which were purchased by Knight from appellant were taken into custody by Daniels.
 {¶ 13} The drugs purchased by Knight were identified as exhibits A through E and were admitted into evidence. The photographs of the drugs were identified as exhibits F through I and admitted into evidence. Three compact discs, which were made from audiotapes processed by McNabb, were identified as exhibits J through L and were admitted into evidence.
 {¶ 14} The jury returned guilty verdicts to Counts 1, 2, 5, 6, and 7. Appellant was sentenced to one-year prison terms on each of Counts 1, 2, 5, and 6; and a four-year prison sentence on Count 7. The sentences were to be served concurrently, but consecutively to sentences imposed in another case in the Ashtabula Common Pleas Court. The other case was identified as case number 04-CR-121.[2] Smith filed a timely appeal from the order sentencing him to prison in this case.
 {¶ 15} Smith has asserted three assignments of error on appeal. The first assignment of error is as follows:
 {¶ 16} "The Ashtabula County Court of Common Pleas erred to the prejudice of appellant when it overruled appellant's motion to dismiss for failure to bring the appellant to trial within the time limits provided in Ohio Revised Code section 2945.71."
 {¶ 17} R.C. 2945.71 reads, in pertinent part:
 {¶ 18} "(C) A person against whom a charge of felony is pending:
 {¶ 19} * * *
 {¶ 20} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
 {¶ 21} "(D) A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged, as determined under divisions (A), (B), and (C) of this section."
 {¶ 22} In State v. Baker (1997), 78 Ohio St.3d 108, syllabus, the Supreme Court of Ohio held:
 {¶ 23} "In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial inictment."
 {¶ 24} In this case, appellant was charged with "one or more charges" which initially were charged as felonies. The first felony charge was filed in the Ashtabula County Court, Eastern Division, on November 18, 2002, and it resulted in a plea to a misdemeanor. The second prosecution involved multiple felony charges and it was initiated by means of a grand jury indictment issued on May 9, 2003. Division (D) of R.C. 2945.71 required that appellant's trial commence within two hundred seventy days from the "act or transaction" for which the multiple felony charges arose. Therefore, our analysis of this first assignment of error begins with whether the "act or transaction" for the first felony charge was the same "act or transaction" for the second felony charge. A review of the underlying facts is necessary to resolve this issue.
 {¶ 25} The indictment returned by the grand jury alleged that Smith committed drug trafficking offenses on the following dates: September 18, September 19, October 3, October 10, and November 13, 2002. The offenses all involved the use of a confidential informant who made drug purchases from Smith as part of an ongoing investigation conducted by T.A.G.
 {¶ 26} Appellant maintains the May 9, 2003 indictment was subject to a timetable beginning on November 18, 2002, the date appellant was charged with crimes issuing from the November 15, 2002 search and seizure. Appellant's position rests upon his assertion that the speedy trial clock began to run when the state of Ohio had knowledge and possession of the facts upon which to indict him.
 {¶ 27} Appellant's argument is flawed. While the state may have possessed the knowledge of the facts appearing in the May 9, 2003 indictment prior to November 18, 2002, such knowledge is not dispositive of the speedy trial analysis. The holding in Baker
is disjunctive and specifically sets forth two scenarios, either of which will reset the speedy trial timetable for charges arising from a subsequent indictment. Pursuant to Baker, we hold that even though the state was aware of the substantive facts supporting the May 9, 2003 indictment,[3] the charges resulting from the November 15, 2002 search and seizure were factually different from the charges arising from the May 9, 2003 indictment. Even though all the charges in question were a function of an "ongoing investigation," the multiple prosecutions did not arise from the "same facts" or "same set of circumstances."
 {¶ 28} Specifically, the November 18, 2002 charges were a result of evidence seized from appellant's residence. The May 9, 2003 charges followed a series of "controlled buys" (on September 18, October 3, October 10, and November 13, 2002) made by informants for T.A.G. While the state was aware of the facts upon which the indicted offenses were premised at the time the November 18, 2002 charges were filed, these facts and their surrounding circumstances are completely separate and removed from the facts supporting the November 18, 2002 charges. In short, a controlled buy which occurred on one of the four dates set forth supra is distinguishable from a possession of controlled substances charge arising from the search warrant.
 {¶ 29} This conclusion is sufficient to sever the nexus between the crimes arising from the execution of the November 15, 2002 warrant and the crimes charged via the May 9, 2003 indictment. The holding in Baker is disjunctive, i.e. the state need only establish one of the two scenarios, either different facts or lack of knowledge. Accordingly, once there has been an adequate demonstration that the latter indictment arose from different facts than those upon which the initial charges were premised, the latter charges will not be subject to the speedy-trial timetable of the initial charges. In short, appellant's argument is without merit because it misconstrues the fundamental holding of Baker.
 {¶ 30} For these reasons, we hold the trial court did not err in concluding the facts of the indicted charges and the facts of the charges issuing from the warrant were entirely different. Hence, the speedy trial time was properly measured from the date appellant was arrested on the May 9, 2003 indicted charges. R.C.2945.71(C)(2) provides a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." Appellant was arrested on August 15, 2003 and therefore, his speedy trial clock commenced on August 16, 2003.State v. Stamps (1998), 127 Ohio App.3d 219, 223. Appellant was brought to trial on the May 9, 2003 indictment within the statutory window. Thus, appellant's first assignment of error is overruled.
 {¶ 31} Appellant's second assignment of error reads:
 {¶ 32} "The appellant did not receive the effective assistance of counsel guaranteed to him by the sixth andfourteenth amendments to the United States Constitution and Article I, section 10 of the Ohio Constitution."
 {¶ 33} Attorney Humpolick was appointed to represent appellant on August 19, 2003, and continued to represent him until February 19, 2004, when the trial court permitted his withdrawal due to a conflict of interest. The withdrawal was permitted because Attorney Humpolick learned in February 2004 that the public defender's office, by whom he was employed, also represented the individual who served as a confidential informant in appellant's case.
 {¶ 34} During the period of his representation, Attorney Humpolick filed a motion for disclosure of the name of the confidential informant, and also filed a motion for continuance with a waiver of speedy trial. The former motion was filed on October 22, 2003 and the latter motion was filed on December 3, 2003.
 {¶ 35} Appellant argues that Attorney Humpolick provided ineffective assistance of counsel during the six months he represented appellant due to the conflict of interest, even though the conflict of interest did not become known to Attorney Humpolick until February 2004. Appellant further argues that the state of Ohio proximately caused the representation of Attorney Humpolick to be ineffective because of its refusal to disclose the identity of the confidential informant until being ordered to do so by the trial court on April 13, 2004. He posits that the identity of the confidential informant was known to the state of Ohio and therefore, the conflict of interest in Attorney Humpolick's office was so obvious it should have been made known at the first opportunity. Had the state promptly disclosed the identity of the confidential informant, appellant argues, the conflict of interest would have come to light at an earlier time, so that there would have been no need to file for a continuance on December 3, 2003. We do not agree that Attorney Humpolick's representation was ineffective.
 {¶ 36} The two-part standard for judging whether counsel's representation was ineffective was articulated in State v.Bradley (1984), 42 Ohio St.3d 136, paragraph two of the syllabus:
 {¶ 37} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v.Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623; Strickland v.Washington (1984), 466 U.S. 668, followed.)"
 {¶ 38} Further, in Strickland v. Washington (1984),466 U.S. 668, 689, the United States Supreme Court stated:
 {¶ 39} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"
 {¶ 40} There is nothing in the record to suggest that Attorney Humpolick was on notice prior to February 2004 that a conflict of interest existed. When he learned of the conflict of interest, he promptly notified the trial court and withdrew from appellant's representation. Beyond filing a motion to disclose the identity of the confidential informant, which he did on October 22, 2003, it is unreasonable to conclude that Attorney Humpolick knew or should have known of the conflict of interest before the time it was actually disclosed to him.
 {¶ 41} Finally, appellant alleges that the state was the precipitating cause for his claim of ineffective assistance of counsel because, in appellant's estimation, the state knew of the conflict of interest, but chose to keep silent on the matter. The record fails to reveal any evidence of such a conspiracy. As this allegation is purely speculative we decline to examine its merits.
 {¶ 42} Smith's second assignment of error is without merit.
 {¶ 43} Smith's third assignment of error asserts:
 {¶ 44} "The trial court erred to the prejudice of appellant when it sentenced him to a prison sentence consecutive to a sentence imposed upon him in another case."
 {¶ 45} In light of the recent decision of the Supreme Court of Ohio in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, this assignment of error has merit. In Foster, the court held R.C. 2929.14(E)(4) unconstitutional insofar as it requires "judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences[.]" Id. at paragraph three of the syllabus. Here, the trial court made judicial findings of fact before the imposition of a consecutive sentence. The judicial findings mandated by S.B. 2 were rendered unconstitutional by Foster and therefore a trial court is no longer required to make such findings when imposing consecutive sentences. Id. at paragraph seven of the syllabus. Accordingly, appellant's sentence is void, must be vacated, and remanded for resentencing. Id. at ¶ 103-104. For these reasons, appellant's third assignment of error is well taken.
 {¶ 46} For the aforementioned reasons, appellant's first and second assignments of error are overruled. Appellant's third assignment of error is sustained. Therefore, the judgment of the Ashtabula Court of Common Pleas is affirmed in part and reversed in part. This case is remanded for resentencing for proceedings consistent with this opinion pursuant to Foster.
O'Neill, J., concurs, Grendell, J., concurs in judgment only.
[1] Prior to the commencement of trial, counts 3 and 4 were dismissed.
[2] See companion case on appeal, State v. Smith,
2004-A-0088.
[3] When the lab results came back on November 22, 2002, to confirm the existence of controlled substances, the T.A.G. agents had everything necessary to pursue drug trafficking and/or drug possession charges against Smith.