OPINION
{¶ 1} Appellant, Robert M. Clark ("appellant"), appeals from the judgment entry of the Painesville Municipal Court denying appellant's motion to dismiss for speedy-trial violations. The trial court applied an incorrect standard in denying appellant's motion to dismiss, however the outcome was correct. Therefore, for the reasons herein, the judgment of the trial court is affirmed.
 {¶ 2} On July 3, 2006, the Madison Township Police Department received a report that someone had shot a dog. The police arrived at appellant's house, who *Page 2 
denied shooting his dog, but claimed that the noise his neighbors heard was the sound of firecrackers. Shortly thereafter, appellant admitted that he shot his Great Dane in the head because it kept getting out of the house and stated that he did not know if the dog was alive or not. The police officer went around to the back of appellant's house, where he found a blood stained deck. The officer observed the dog lying in a pile of refuse behind a shed and took pictures of both the blood stained deck and the dog.
 {¶ 3} A short while later, Ben Moehnert, the shelter manager from the Lake County Humane Society arrived at appellant's house. Mr. Moehnert realized that the dog was still alive and immediately transported it to a veterinarian. The dog was euthanized by the attending veterinarian due to the severe blood loss, worsening physical condition and neurologic clinical signs.
 {¶ 4} Stemming from this incident, appellant was charged with cruelty to animals in violation of R.C. 959.13 (referred to as "first complaint").[1] This section makes it a second-degree misdemeanor for any person to "[t]orture an animal, deprive one of necessary substance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water." R.C.959.13(A)(1). See, also, R.C. 959.99(D). The degree of culpability required for a violation of R.C. 959.13(A)(1) is recklessly. State v.Bergen (1997), 121 Ohio App.3d 459, 461. See, also, R.C. 2901.21(B). Appellant entered a not guilty plea to this charge.
 {¶ 5} A special prosecutor was assigned to appellant's case and entered his notice of appearance on July 18, 2006. A pretrial originally scheduled for July 24, 2006 *Page 3 
was rescheduled until August 14, 2006. During that time period, the special prosecutor was able to review the entire case file, including the photographs taken at appellant's house, and interview Mr. Moehnert regarding his observations on July 3, 2006.
 {¶ 6} It was during the interview of Mr. Moehnert that the special prosecutor learned for the first time that while the dog was lying behind the shed, it had been chained to a tether, which was attached to a fence. Mr. Moehnert also informed the special prosecutor that he noticed that the tether chained to the dog was not long enough for the dog to reach the porch. Mr. Moehnert had not informed anyone of these observations until he spoke with the special prosecutor immediately prior to the August 14, 2006 pretrial.
 {¶ 7} Based upon the additional information that Mr. Moehnert provided, the special prosecutor dismissed the first complaint and immediately filed a second complaint, alleging appellant had violated R.C. 959.131, prohibitions concerning companion animals ("second complaint").[2] R.C. 959.131(B) states "[n]o person shall knowingly torture, torment, needlessly mutilate or maim, cruelly beat, poison, needlessly kill, or commit an act of cruelty against a companion animal." A violation of R.C. 959.131(B) is a first-degree misdemeanor. R.C. 959.99(E)(1). Appellant entered a not guilty plea to the second complaint.
 {¶ 8} At a pretrial on September 25, 2006, the trial court ordered that the matter be set for trial. On September 28, 2006, after receiving appellant's jury demand, the trial court scheduled a jury trial to commence on October 20, 2006. The trial date was sua sponte rescheduled on October 3, 2006 to October 27, 2006. On October 17, *Page 4 
2006, the trial date was again sua sponte rescheduled for November 3, 2006. On November 2, 2006, appellant filed a motion to dismiss the charge for speedy trial violations. The trial court held a hearing on the matter and denied appellant's motion, reasoning that the second complaint was a different statute than the originally dismissed charge and required a different standard of proof.
 {¶ 9} Thereafter, appellant entered a plea of no contest to violating R.C. 959.131(B). The trial court found appellant guilty of this charge. Appellant was sentenced to 180 days in jail, with 150 days suspended. Moreover, appellant was given the opportunity to avoid 20 days of the jail sentence through performance of specific community service, i.e. appearing as "Safety Pup" at local schools. Appellant's sentence was stayed pending the outcome of this appeal.
 {¶ 10} Appellant assigns a single assignment of error for our consideration:
 {¶ 11} "[1.] The [t]rial [c]ourt erred to the prejudice of the defendant-appellant in denying [sic] Motion to Dismiss for Speedy Trial Violations by misapplying the law."
 {¶ 12} In reviewing appellant's assignment of error, we apply a de novo standard of review to questions of law and a clearly erroneous standard to questions of fact. State v. Evans, 11th Dist. No. 2003-T-0132, 2005-Ohio-1787, at ¶ 32, citing State v. Thomas (Aug. 4, 1999), 9th Dist. No. 98CA007058, 1999 Ohio App. LEXIS 3683, at *4.
 {¶ 13} Appellant asserts that his right to a speedy trial was violated since he was not brought to trial on the second complaint within the 90-day period contained in R.C. 2945.71(B)(2). This section clearly states that an individual charged with a first or second degree misdemeanor must be brought to trial within 90 days after the person's arrest or the service of summons. R.C. 2945.71(B)(2). Appellant argues that because *Page 5 
the second complaint arose from the same facts as the first complaint and the state knew of the facts at the time of the first complaint, the timetable for trial on the second complaint began on July 3, 2006. We disagree.
 {¶ 14} In State v. Baker (1997), 78 Ohio St.3d 108, syllabus,1997-Ohio-229, the Supreme Court of Ohio held:
 {¶ 15} "In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges,or the state did not know of these facts at the time of the initial indictment." (Emphasis added).
 {¶ 16} Furthermore, the speedy-trial timetable on the subsequent charge begins to run when the charge is filed and not from the time the state learned of the new facts on which the charge is based. Id. at 111-112.
 {¶ 17} As this court and other Ohio courts have recognized, "[t]he holding in Baker is disjunctive and specifically sets forth two scenarios, either of which will reset the speedy trial timetable for charges arising from a subsequent indictment." State v. Smith, 11th Dist. No. 2004-A-0089, 2006-Ohio-5187, at ¶ 27. See, also, State v.Haggard (Oct. 6, 1999), 9th Dist. No. 98CA007154, 1999 Ohio App. LEXIS 4723, at *11. Therefore, based on Baker, "the state need only establish one of the two scenarios, either different facts or lack of knowledge."Smith, at ¶ 29. (Emphasis sic.)
 {¶ 18} Appellant's reliance on this court's opinion in State v.Clay (1983), 9 Ohio App.3d 216 is misplaced. In Clay, this court held:
 {¶ 19} "[W]hen new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the *Page 6 
time within which trial is to begin on the additional charges is subject to the same statutory limitations period that is applied to the original charge." Id. at 216, citing People v. Parker (1978), 59 Ill. App.3d 302,305, 375 N.E.2d 465. (Emphasis added.)
 {¶ 20} However, the decision in Clay was pre-Baker and, as stated previously, the Supreme Court of Ohio has held that the exceptions applicable to the speedy-trial timetable are disjunctive and, therefore, the holding in Clay is inapplicable to the present case.
 {¶ 21} The state does not argue that the second complaint arose from facts different from the first complaint. Therefore, the first exception contained in Baker is inapplicable. However, the state attempts to proceed under the second Baker exception — claiming that the interview with Mr. Moehnert revealed new evidence that supported dismissal of the first complaint and the filing of the second, more serious, complaint. The question this court must answer is whether the information provided by Mr. Moehnert was new evidence that the state did not have knowledge of for purposes of the speedy-trial timetable.
 {¶ 22} The state contends that the information provided by Mr. Moehnert, that the dog was chained to a tether, which was chained to a fence, and that the tether was not long enough to reach the deck, provided the state with new evidence that supported the more serious charge under R.C. 959.131(B), which requires a mens rea of knowingly. With this information, the state believed that appellant's actions rose to the more serious level of knowingly since it presumes that one does not chain a dead dog to a tether and, therefore, appellant knew the dog was still alive, yet knowingly allowed it to suffer. *Page 7 
 {¶ 23} Appellant first contends that the state is charged with knowledge of these additional facts based upon the pictures taken at appellant's home by the responding police officer as well as the extensive media coverage surrounding this case. However, during oral argument in the trial court appellant's counsel stipulated that the state did not receive the photographs until August 14, 2006. Therefore, it is unclear to this court how the state can be charged with knowledge when appellant's counsel agreed that the prosecutor did not receive the photographs until August 14, 2006, the date the second complaint was filed. Also, we refuse to accept appellant's argument that the state is charged with knowledge surrounding all of the facts of a case based upon extensive media coverage or what is reported in the media.
 {¶ 24} Appellant also argues that the term "the state" should be interpreted broadly and does not simply encompass the single prosecutor handling the case. Upon this argument, appellant concludes that in this case, the state should be charged with knowledge of the additional facts leading to the second complaint. The record indicates that possibly the police officer who responded to the complaints of gunshots and Mr. Moehnert, the Lake County Humane Society employee, were the only individuals who had knowledge regarding the tether. Appellant asserts that because the police officer and Mr. Moehnert knew of these additional facts, then the state also knew of them.
 {¶ 25} Appellant's argument is flawed. A similar argument was advanced and rejected by the Ninth District Court of Appeals in State v.Skorvanek, 9th Dist. No. 05CA008743, 2006-Ohio-69, at ¶ 18-20. InSkorvanek, the appellee argued "that `all of the facts that gave rise to the offenses charged were gathered in the investigation * * * *Page 8 
and were known to [the state] two weeks prior to (appellee's) first indictment.'" Id. at ¶ 18. In rejecting this argument, the court stated:
 {¶ 26} "The record indicates that the LPD was in possession of all facts relevant to both indictments on May 18, 2004. The Lorain County Prosecutor, however, did not come into possession of said facts until July 12, 2004; over one month after the initial indictment was handed down on June 2, 2004.
 {¶ 27} "The police do not prosecute criminal cases; they enforce the laws of our state. The office of the prosecutor is responsible for the filing of charges, preparing court documents, and bringing the alleged criminal to trial. Therefore, it flies in the face of logic to presume that the Lorain County Prosecutor, on behalf of the State of Ohio, could indict Appellant on June 2, 2004 for the offenses stemming from the March 13, March 23, and April 1, 2004 indictments when they did not have all the facts relating to those offenses until July 12, 2004." Id. at ¶ 19-20.
 {¶ 28} The same rationale applies here. Appellant's counsel stipulated at the trial court hearing that Mr. Moehnert revealed his additional information to the special prosecutor on or about August 14, 2006. There is also no dispute that Mr. Moehnert had not told anyone else this information prior to August 14, 2006. Therefore, prior to August 14, 2006, the only individual who had knowledge of the additional evidence that supported charging Appellant with a more serious crime was Mr. Moehnert.
 {¶ 29} R.C. 1717.06 provides for the appointment of agents by a county humane society. This section reads, in part:
 {¶ 30} "A county human society organized under section 1717.05 of the Revised Code may appoint agents * * * for the purpose of prosecuting any person guilty of an act *Page 9 
of cruelty to persons or animals. Such agents may arrest any person found violating this chapter or any other law for protecting persons or animals or preventing acts of cruelty thereto. Upon making an arrest the agent forthwith shall convey the person arrested before some court or magistrate having jurisdiction of the offense, and there make complaint against the person on oath or affirmation of the offense."
 {¶ 31} If the individual who was at appellant's home after the incident was an appointed agent under R.C. 1717.06, then the state would be charged with knowledge of the additional facts that led to the second complaint. However, there is no dispute that Mr. Moehnert was simply the shelter manager of the Lake County Humane Society and was not an agent with the authority described in R.C. 1717.06. Without such authority, Mr. Moehnert's knowledge regarding the tether cannot be attributed to the state.
 {¶ 32} Based upon the evidence in the record, it is clear that the state did not have knowledge of this additional information supporting the second complaint at the time of the filing of the first complaint. Therefore, pursuant to Baker, the speedy-trial timetable did not run from the date of the first complaint, but began on August 15, 2006, the date after which appellant was served with the summons for the second complaint. See State v. Dalton, 2d Dist. No. 2003 CA 96, 2004-Ohio-3575, at ¶ 13 (facts supporting additional charges were not known to the state until after the initial indictment date); State v. Manley (Nov. 1, 2001), 8th Dist. No. 79183, 2001 Ohio App. LEXIS 4895, at *9-10 ("further `analysis' of the shooting led to the discovery of additional facts that were unknown at the time of the [first] indictment");Baker, 78 Ohio St.3d at 111 (results of *Page 10 
further analysis of the records obtained at the time of the initial arrest constituted new evidence).
 {¶ 33} Appellant presents an alternative argument that the speedy-trial timetable should have begun at the time of the first complaint. Appellant argues that based upon the facts that were known at the time of the first complaint, appellant, in essence, could have been charged with the more serious offense, R.C. 959.131(B). Based upon that theory, appellant argues that the new evidence is irrelevant as to whether the state could prove that appellant acted knowingly. "In case after case, it has been determined that a prosecutor may charge a defendant under any statute which proscribes the particular criminal behavior." State v. Stanford (Aug. 30, 1996), 11th Dist. No. 95-T-5358, 1996 Ohio App. LEXIS 3674, *4-*5. "Unless the choice to prosecute under the statute carrying a higher penalty can be shown to be based on impermissible criteria, such as race, religion, or other arbitrary classification, which is not alleged, the election to so proceed does not violate due process." State v. Miles (1983), 8 Ohio App.3d 410, 411, citing State v. Schubert (1947), 80 Ohio App. 132, 133.
 {¶ 34} Appellant does not allege that either the decision to initially charge him with the less serious offense or the decision to charge him with the more serious offense was based upon any sort of impermissible criteria. Therefore, it was completely within the prosecutor's discretion to determine under which statute appellant would be charged. Even if, as appellant alleges, the prosecutor could have initially charged appellant with the more serious violation, R.C. 959.131(B), for whatever reason he decided not to and such a decision is within a prosecutor's discretion. Furthermore, the fact that after discovering new evidence the prosecutor, in his discretion, decided to *Page 11 
dismiss the first complaint and charge appellant with a more serious crime does not negate the fact that the evidence provided by Mr. Moehnert was new evidence of which the prosecutor was not aware of at the time the first complaint was filed.
 {¶ 35} Appellant's assignment of error is without merit.
 {¶ 36} The judgment of the Painesville Municipal Court is affirmed.
DIANE V. GRENDELL, J., MARY JANE TRAPP, J.,
concur.
[1] This case was assigned case number 06 CRB 1479.
[2] The second case was assigned case number 06 CRB 1846. *Page 1