[Cite as *State v. Leslie*, 2011-Ohio-2727.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 10CA17 |
| | : | 10CA18 |
| Plaintiff-Appellee, | : | |
| | : | <u>DECISION AND</u> |
| v. | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| FRANK LESLIE, | : | |
| | : | |
| and | : | **RELEASED 06/01/11** |
| | : | |
| SHERRY LESLIE, | : | |
| | : | |
| Defendants-Appellants. | : | |

_____
<u>APPEARANCES</u>:

Kyle C. Henderson, Logan, Ohio, for appellants.

Laina Fetherolf-Jordan, Hocking County Prosecutor, and Jonah M. Saving, Hocking County Assistant Prosecutor, Logan, Ohio, for appellee.
_____
Harsha, P.J.

{¶1} After a bench trial, the court convicted both Frank and Sherry Leslie of four counts of cruelty to animals. On appeal the Leslies contend the State failed to prove that they recklessly deprived the animals of necessary sustenance or confined the animals without supplying them with sufficient food and water. Specifically, they point to their evidence that: 1.) the animals had improved from an even worse condition under their care and 2.) they had certain foods for the animals. This argument essentially contends their testimony was more credible than the State's evidence. However, we leave credibility determinations to the trier of fact. The trial court chose to believe the State's evidence that the animals were starving when the humane society

took them, as demonstrated by the animals' subsequent rapid weight gain upon regular feeding and minimal medical attention.  Thus we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice, i.e. the convictions are not against the manifest weight of the evidence.  And this result necessarily includes a finding that sufficient evidence supported the convictions.

{¶2}    Mrs. Leslie argues that she received ineffective assistance of counsel. She claims that she gave her attorney photographs and video footage of the animals taken at the time she and her husband took possession of them and at various other times before the humane society took the animals.  According to Mrs. Leslie, this evidence would have shown that the animals improved under the Leslies' care, but her attorney failed to introduce the photographs or video footage at trial.  Because Mrs. Leslie's argument relies on evidence outside the record we cannot address it on direct appeal; the proper vehicle to raise it is in a petition for post-conviction relief under R.C. 2953.21.

{¶3}    Finally, the Leslies contend, and the State concedes, that the trial court committed plain error when it ordered them to pay restitution to the Hocking County Humane Society for the expenses it incurred in caring for the animals.  Because the expended funds do not constitute a victim's economic loss under R.C. 2929.28(A)(1), we reverse the restitution orders.  Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

### I.  Facts

{¶4}    After the Leslies were each charged with four counts of cruelty to animals in violation of R.C. 959.13(A)(1), all second degree misdemeanors, their cases

proceeded to a bench trial.  There, Hocking County Humane Society Officer Sandra Harvey testified that several people made complaints to the humane society about the Leslies' animals but most were reluctant to give statements because of the Leslies' "supposedly * * * foul nature."  Harvey went to the Leslies' property on November 8, 2009.  She took some photographs the following day, and she secured a search warrant the humane society executed on November 11.  That day, the humane society seized a horse, two female goats (does), and one male goat (a buck), which the Leslies admitted they owned.  Harvey testified that the Leslies kept the animals in an approximately one acre fenced area with very short grass.  Harvey testified that horses and goats need longer grass to process food.  Harvey admitted that she saw two bales of hay in the area on November 9, but testified that on November 11, Mr. Leslie told her that the couple did not have any hay, but they "were going to get some."  Harvey testified that the water she saw for the animals was green and murky.  She did not see hay in the Leslies' barn but did see "several bags" of grain, which the humane society concluded contained an adequate percentage of protein.

{¶5}    Harvey admitted that she had driven past the horse "from time to time" before November 8 during her travels but never stopped her vehicle.  However, Harvey only saw the horse "kind [of] out of the corner [of] her eye."  According to Harvey, when the humane society seized the animals, the horse was dehydrated and lethargic, its ribs were visible, and it was "in pretty bad health" overall.  Harvey was "quite surprised" at how thin the goats were, though she acknowledged that the buck had "a little more flesh to him" compared to the other goats. Harvey testified that aside from worming the animals, the humane society did not give them any treatment beyond regular feeding,

and the animals gained weight quickly.

{¶6}    Veterinarian Dr. Kim Stevelt testified that he examined the animals on November 12 and found that they were "very thin" had "poor hair coats" and "in general had the appearances of animals that had been * * * starved."  The State introduced into evidence a copy of Henneke's nine-point scale for evaluating animal body fat levels.  Although this scale specifically refers to body fat levels in horses, Stevelt used the number ranking system to rate all of the animals.  A score of "1" means the animal is in poor condition, i.e. it suffers from extreme emaciation.  A score of "9" means the animals is extremely fat.  A score of "5" indicates a moderate weight.  Stevelt gave all the animals a "1" except for the buck, which he gave a "2," explaining that male goats seem to "be able to weather the storm better" than females.

{¶7}    Stevelt testified that in his experience a malnourished horse would start to recover in a "matter of few weeks" and would normally take six months to get back into good health.  Stevelt did not testify to a specific time frame it would take a malnourished goat to reach good health.  However, he examined photographs of the horse taken approximately one, four, and sixth months after the humane society took the animal.  He also examined photographs of the goats taken approximately six weeks and four months after the humane society took them.  Stevelt testified that the photographs showed the animals' progressive weight gain.  Within roughly six months the horse appeared to be in "[v]ery good health."  And within roughly four months, the goats appeared to be in good health.  Stevelt testified that the photographs confirmed his initial impression that the animals were starved and did not suffer from ill health or old age.   He explained that he did not medically treat the animals but all of them "very

quickly gained their weight" under the humane society's care. Stevelt acknowledged that the mother doe would have lost weight after giving birth to the baby, but he testified that alone would not have caused the mother's emaciated condition. Stevelt testified that in his opinion, before the humane society took the animals, the animals had been deprived of necessary food or sustenance.

{¶8}   Anna Ricketts, the Leslies' neighbor, claimed that the Leslies had the horse for at least a year before the humane society took it. Ricketts testified that she thought the Leslies acquired all three goats a short time before they got the horse and that all the goats were in "good condition" at that time. In addition, Ricketts testified that when the Leslies received the horse, it looked "[p]retty similar" to how it did in November 2009 and may have actually been "just a little bit fatter" when the Leslies got it. Ricketts described the Leslies' field as "dead." Ricketts called the humane society about the animals since they "kept getting smaller and smaller and smaller and they weren't being taken care of." She and her husband talked to the Leslies on "several occasions" and told them they needed to feed the animals. The Leslies just screamed and used profanities in response. Ricketts admitted that she had trouble with the Leslies in the past and that the Leslies got a civil protection order to keep her husband from contacting them.

{¶9}   Leone Shastine, a friend of the Leslies, testified that the couple got the horse around the end of May 2009, and at that time, the horse "was pretty starved," missing hair, and looked much worse than it did in one of the State's photographs of the horse from November 2009. After viewing photos of the mother doe and buck taken in November 2009, Shastine claimed both goats were skinnier when the Leslies got them.

Shastine claimed she saw the Leslies feed the horse before and saw her children feed the horse and goats.  Shastine also testified to seeing water out for the animals.  In Shastine's opinion, the Leslies did not neglect the animals.

{¶10}  Sherry Leslie testified that the couple acquired the mother doe and the buck in April 2009, that they got the horse in May 2009, and that the mother doe had the baby doe approximately two or three months after the couple acquired the mother.  Mrs. Leslie testified that the older goats were "muddy, skinny, dirty, and not very happy" when the Leslies got them.  According to Mrs. Leslie, the horse was in "horrible condition."  She claimed he had "hoof prints on his body and open wounds on his snout[.]"

{¶11}  Mrs. Leslie claimed the couple provided food and water for all four animals and they gained weight under the Leslies' care.  She testified that the couple kept the animals in a two and a half acre pasture where the grass was taller than her, i.e. over five feet high, before their animals ate it down.  Mrs. Leslie claimed that at some point the couple filled the entire barn with hay to prepare for winter, but the animals ate it all so they were "getting ready to buy more."  She also claimed that she and her husband had "hundreds and hundreds of pounds of grain" in the garage when the humane society came.  But according to Mrs. Leslie, the buck "always had a round droopy tummy and his spine was always showing[,]" and he had "always been hippy[,]" which she thought was normal.  She claimed the buck was "strong as an ox" and dragged Mr. Leslie around the yard "many times."  Mrs. Leslie testified that the mother doe "was always more slender" and started to put on weight from October to November since the baby had been weaned.  Mrs. Leslie claimed she took the buck and mother doe to a

trade show in October 2009, i.e. the month before the humane society took them away, that they were the "two prettiest goats in the whole area," and that they "won the prize of compliments all throughout Lucasville, people would comment and look at them."

**{¶12}** The trial court found the Leslies guilty on all counts. After sentencing the Leslies filed their appeals, which we sua sponte consolidated.

## II. Assignments of Error

**{¶13}** Mr. Leslie assigns three errors for our review:

1. The evidence is insufficient to support conviction of cruelty to animals.

2. The conviction on four counts of cruelty to animals was against the manifest weight of evidence.

3. The trial court erred in imposing the payment of restitution to the Hocking County Humane Society.

**{¶14}** Mrs. Leslie assigns four errors for our review:

1. The evidence is insufficient to support conviction of cruelty to animals.

2. The conviction on four counts of cruelty to animals was against the manifest weight of evidence.

3. Trial counsel's failure to submit exculpatory evidence provided to counsel by defendant was ineffective assistance of trial counsel that prejudiced defendant resulting in conviction.

4. The trial court erred in imposing the payment of restitution to the Hocking County Humane Society.

## III. Manifest Weight of the Evidence and Sufficiency of the Evidence

**{¶15}** In their first and second assignments of error, the Leslies contend that their convictions were against the manifest weight of the evidence and that insufficient evidence exists to support their convictions. "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion

necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, --- N.E.2d ---, 2010-Ohio-6597, at ¶34. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id., quoting *State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶9, in turn, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, 1997 WL 600669.[1] Therefore, we first consider whether the Leslies' convictions were against the manifest weight of the evidence.

{¶16} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, Athens App. No. 09CA3, 2009-Ohio-5390, at ¶24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson* (1991), 58 Ohio St.3d 40, 42, 567 N.E.2d 266, citing *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, at paragraph two of the syllabus.

{¶17} We must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v.*

---

[1] However, the inverse proposition is not always true, i.e. a conviction may pass a sufficiency analysis yet still fail to satisfy a manifest weight of the evidence challenge. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

*Grant*, 67 Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50.  The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (per curiam).  Thus, we will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice.

{¶18}  R.C. 959.13(A)(1) provides:  "No person shall * * * [t]orture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water[.]"  "The culpability required for a R.C. 959.13(A)(1) violation is recklessness."  *State v. Nichols*, Hocking App. No. 07AP10, 2007-Ohio-1327, at ¶14, citing *State v. Clark*, Lake App. No. 2007-L-010, 2007-Ohio-5209, at ¶4.  "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."  R.C. 2901.22(C).

{¶19}  The State did not contend that the Leslies tortured, beat, mutilated or killed the animals in question.  The alleged misconduct here relates to food, water and shelter.  The Leslies argue that the State failed to prove that they recklessly deprived the animals of necessary sustenance or impounded or confined the animals without supplying them with a sufficient quantity of good wholesome food and water.  They

claim that the testimony from Shastine and Mrs. Leslie shows the animals were in a poor condition when the Leslies took possession of them and actually improved under their care. The Leslies point to evidence of food and water they provided for the animals. They argue that the pasture they confined the animals in had short green grass and claim that the animals could survive in such a pasture. In addition, the Leslies point to testimony from Harvey that there were two bales of hay and greenish water in a trough for the animals when she came to their property. They also contend that Harvey testified that the grain taken from their barn was of "sufficient quality."

{¶20} As we explained in *State v. Murphy*, Ross App. No. 07CA2953, 2008-Ohio-1744, at ¶31: "It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently."

{¶21} Here, the trial court chose to believe the State's version of events, and we will not substitute our judgment for that of the finder of fact under these circumstances. The evidence reasonably supports the conclusion that the Leslies recklessly deprived the animals of necessary sustenance or confined the animals without supplying them with a sufficient quantity of good wholesome food and water. Having heard the testimony and having observed the demeanor of the witnesses, the trial court could choose to believe all, part, or none of the testimony presented by any of these

witnesses.  *State v. Parish*, Washington App. Nos. 05CA14 & 05CA15, 2005-Ohio-7109, at ¶15.

{¶22}  The trial court discredited some of Ricketts' testimony, such as her claim that the Leslies had the animals for a year before the humane society took them and that the pasture grass was dead.  The court concluded the pasture had "rather short" grass and also recognized evidence of other food the Leslies had, such as some grain and hay.  The court also noted that "there seems to be agreement to some degree that the animals were not in particularly good shape" when the Leslies took them.  Nonetheless, the court concluded that the animals were starved when the humane society took them.  The court found the testimony of Stevelt and Harvey credible.  Both testified about the animals' poor condition when the humane society seized them.  Stevelt testified that once he observed (via photographic evidence) the animals' rapid weight gain under the humane society's care, which only involved worming and regular feeding, his initial suspicion that the couple starved the animals was confirmed.  Moreover, the court was free to discredit Mrs. Leslie's testimony that the couple fed these emaciated animals an over five-foot high pasture of grass and barn full of hay.

{¶23}  Thus, after reviewing the entire record, we cannot say that the trial court lost its way or created a manifest miscarriage of justice when it found the Leslies guilty of four counts of cruelty to animals.  Therefore, we overrule the Leslies' second assignments of error.  And because this conclusion necessarily includes a finding that sufficient evidence supports the Leslies' convictions, we also overrule their first assignments of error.  See *Puckett*, supra, at ¶34.

IV.  Ineffective Assistance of Counsel

{¶24} In her third assignment of error, Mrs. Leslie contends that her trial counsel rendered ineffective assistance. To prevail on a claim of ineffective assistance of counsel, an appellant must show that: 1.) his counsel's performance was deficient, and 2.) the deficient performance prejudiced his defense so as to deprive him of a fair trial. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶205, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish deficient performance, an appellant must show that trial counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶95. To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. Id. The appellant has the burden of proof on the issue of counsel's ineffectiveness because a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶62.

{¶25} Mrs. Leslie argues that the "crux" of her defense was that she and her husband rescued the animals when they were in very poor condition and that the animals had in fact improved under their care. She claims that she and Mr. Leslie took photographs and video footage of the animals when they received them and on various occasions afterwards, and this evidence supported her defense. Mrs. Leslie contends she gave this evidence to her attorney, but her attorney failed to offer it at trial. Mrs. Leslie also appears to complain that her attorney failed to forward the evidence to her husband's attorney.

{¶26} As proof of the existence of this evidence, Mrs. Leslie points to some of her testimony at trial in which she mentioned having photographs of the goats from October 2009 and asked the prosecutor if he looked at the video she provided. However, the record does not contain these alleged photographs or video footage, let alone any evidence that Mrs. Leslie in fact gave these items to her attorney. Because Mrs. Leslie's claim depends upon evidence outside the record, it cannot be adjudicated on direct appeal, and the proper vehicle to raise it is in a petition for post-conviction relief under R.C. 2953.21. *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452 (per curiam). Accordingly, we overrule Mrs. Leslie's third assignment of error.

## V. Restitution Orders

{¶27} In Mr. Leslie's third assignment of error and Mrs. Leslie's fourth assignment of error, the couple contends that the trial court erred when it ordered them to pay restitution to the Hocking County Humane Society. Because the Leslies failed to object to the restitution order at the trial level, they have waived all but plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "A silent defendant has the burden to satisfy the plain-error rule[,] and a reviewing court may consult the whole record when considering the effect of any error on substantial rights." *State v. Davis*, Highland App. No. 06CA21, 2007-Ohio-3944, at ¶22, citing *United States v. Vonn* (2002), 535 U.S. 55, 59, 122 S.Ct. 1043, 152 L.Ed.2d 90.

{¶28} For a reviewing court to find plain error: 1.) there must be an error, i.e., "a deviation from a legal rule"; 2.) the error must be plain, i.e., "an 'obvious' defect in the

trial proceedings"; and 3.) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Furthermore, the Supreme Court of Ohio has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id., quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.

**{¶29}** R.C. 2929.28(A)(1) provides:

(A) In addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a misdemeanor * * * may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. If the court in its discretion imposes one or more financial sanctions, the financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Unless the misdemeanor offense is a minor misdemeanor or could be disposed of by the traffic violations bureau serving the court under Traffic Rule 13, restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court requires restitution, the court shall order that the restitution be made to the victim in open court or to the adult probation department that serves the jurisdiction or the clerk of the court on behalf of the victim.

If the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution. * * *

**{¶30}** The Leslies argues that under the circumstances in this case, the costs

the humane society incurred in caring for the animals do not constitute "property damage" for which restitution could be ordered. They cite *State v. Bybee* (1999), 134 Ohio App.3d 395, 731 N.E.2d 232 and *State v. Hileman* (1998), 125 Ohio App.3d 526, 708 N.E.2d 1078 in support of their argument. The State concedes that the Leslies cited "current" case law for this assignment of error which "does not support the restitution ordered in the case." The State does not present any authority in support of the restitution order but encourages us to consider the humane society's "function as a charitable organization in ruling on whether restitution was proper."

**{¶31}** We agree that the restitution order in this case was improper but for a different reason than the Leslies submit. The *Bybee* and *Hileman* courts interpreted former R.C. 2929.21(E), which stated: "The court may require a person who is convicted of or pleads guilty to a misdemeanor to make restitution for all or part of the property damage that is caused by the offense * * *." The current statute, R.C. 2929.28(A)(1), does not contain specific language limiting restitution to "property damage" but instead refers to restitution to victims for their "economic loss."

**{¶32}** Although the humane society certainly suffered an economic loss by providing care to the Leslies' animals, it is not a "victim" of the Leslies' crimes under R.C. 2929.28(A)(1). In previous decisions construing R.C. 2929.18(A)(1), the provision for restitution in felony cases, which is similar to R.C. 2929.28(A)(1), we explained that a "victim" is "generally defined as the person who was 'the object' of the crime-e.g. the victim of the robbery is the person who was robbed." *State v. Frazier*, Pickaway App. No. 10CA15, 2011-Ohio-1137, at ¶18, quoting *State v. Samuels*, Washington App. No. 03CA8, 2003-Ohio-6106, at ¶5. For example, we have held that a law enforcement

agency is not a "victim" under R.C. 2929.18(A)(1) when it voluntarily expends its own funds to pursue a drug buy through an informant. Id., citing *Samuels* at ¶5, ¶10. Thus, the spent funds cannot constitute a "victim's economic loss" under the statute. Id. And we have found that a trial court committed plain error when it ordered a defendant to pay restitution for such expenditures because the restitution was not authorized by statute. Id., citing *Samuels* at ¶9.

{¶33} The humane society does not constitute a victim, i.e. the object, of the crime of cruelty to animals under R.C. 2929.28(A)(1). Therefore, we conclude the orders of restitution to the humane society amount to plain error. Accordingly, we sustain Mr. Leslie's third assignment of error and Mrs. Leslie's fourth assignment of error, reverse the restitution orders, and remand for further proceedings. This decision renders moot the Leslies' additional arguments that the amount of the restitution orders was excessive.

{¶34} Interestingly, the Revised Code contains provisions that provide financial assistance for humane societies in cases such as this. R.C. 959.13(C) provides: "All fines collected for violations of [R.C. 959.13] shall be paid to the society or association for the prevention of cruelty to animals, if there be such in the county, township, or municipal corporation where such violation occurred." The Hocking County Humane Society may qualify as such an organization and be entitled to the fines collected from the Leslies. Moreover, R.C. 959.99(D) provides that when a person violates R.C. 959.13(A), as the Leslies did, the court "may order the offender to forfeit the animal or livestock and may provide for its disposition, including, but not limited to, the sale of the animal or livestock. If an animal or livestock is forfeited and sold pursuant to this

division, *the proceeds from the sale first shall be applied to pay the expenses incurred with regard to the care of the animal from the time it was taken from the custody of the former owner.* The balance of the proceeds from the sale, if any, shall be paid to the former owner of the animal." (Emphasis added). Here, the trial court ordered the Leslies to forfeit the animals. The trial court did not specifically provide for their disposition, but it could have ordered the sale of the animals, which would have helped the humane society recoup some or all of its expenditures.

{¶35} Accordingly we reverse the order of restitution and remand for imposition of an appropriate order.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellants and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
    William H. Harsha, Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**