[Cite as *In re C.L.*, 197 Ohio App.3d 514, 2011-Ohio-6892.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| In re C.L. | : | |
| | : | |
| | : | Case No. 11CA9 |
| : | | |
| | : | **Released: December 16, 2011** |
| | : | |
| | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |

<u>APPEARANCES</u>:

Timothy Young, Ohio Public Defender, and Sheryl A. Trzaska, Assistant Public Defender, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Kevin A. Rings, Assistant Prosecuting Attorney, for appellee.

**Per Curiam.**

**{¶ 1}** Appellant, C.L., appeals his adjudication of delinquency in the Athens County Juvenile Court after the trial court found him guilty of negligent homicide, a first-degree misdemeanor, in violation of R.C. 2903.05. On appeal, C.L. raises two assignments of error, arguing that (1) he proved self-defense, and (2) his conviction was against the manifest weight of the evidence and there was insufficient evidence to convict him. Having reviewed the record, we find that the trial court's decision finding that C.L. did not prove self-defense was against the manifest weight of the evidence. Accordingly, we sustain C.L.'s second assignment of error and reverse the trial court's judgment.

FACTS

**{¶ 2}** Preliminarily, we note, "If an appellee fails to file an appellate brief, App.R. 18(C) authorizes us to accept an appellant's statement of facts and issues as correct and then reverse a trial court's judgment as long as the appellant's brief reasonably appears to sustain such action. See *Sprouse v. Miller,* [4th Dist.] No. 06CA37, 2007-Ohio-4397, fn. 1. In other words, an appellate court may reverse a judgment based solely on a consideration of an appellant's brief. See id*., citing *Helmeci v. Ohio Bur. of Motor Vehicles* (1991), 75 Ohio App.3d 172, 174, 598 N.E.2d 1294; *Ford Motor Credit Co. v. Potts* (1986), 28 Ohio App.3d 93, 96, 502 N.E.2d 255; *State v. Grimes* (1984), 17 Ohio App.3d 71, 71-72, 477 N.E.2d 1219." *Greene v. Seal Twp. Bd. of Trustees*, 4th Dist. No. 10CA812, 2011-Ohio-1392, at ¶ 12.

**{¶ 3}** Here, the state failed to file a timely responsive brief. The state requested additional time to file its brief, and although this is a priority case, the court granted said motion. The court specifically warned the state, "BECAUSE THIS IS A PRIORITY APPEAL, NO FURTHER EXTENSIONS WILL BE GRANTED ABSENT EXTRAORDINARY CIRCUMSTANCES." Despite this admonishment, the state filed its response after the extended deadline, rendering its brief untimely. Thus, we accept appellant's statement of facts as true.

**{¶ 4}** On June 13, 2010, Scott and Shenandoah Walraven, both adults, hosted a party for numerous teens. The Walravens had supplied a keg of beer, and there was other alcohol present, too. Most of the attendees were too young to legally consume alcohol, but were doing so nonetheless. C.L. attended the party and did not drink any alcohol, nor did his male friends.

**{¶ 5}** Later that evening, C.L. and two of his friends were at their cars discussing leaving the party. Three unknown males approached the cars and began beating on the roof of one of the cars, demanding that C.L. and his friends exit the car so they could fight. One of C.L.'s friends exited the driver's door and began asking why there was going to be a fight. C.L. exited the passenger door to stand near his friend.

**{¶ 6}** Once outside the car, C.L. and his friends recognized the male antagonists as Scott Walraven's son, T.C., and LaMarr Wilder. As C.L.'s friend was trying to explain that he had no intention to fight, T.C. punched C.L.'s friend in the back of the head. Wilder punched C.L. in the temple, knocking him to the ground. The Walravens' son punched C.L.'s second friend in the face, dazing him and possibly rendering him unconscious.

**{¶ 7}** Once C.L. was on the ground, he rolled to his stomach, where Wilder began to pummel his head and neck. Wilder was 5'10", nearly 240 pounds, a football player, and 19 years old. While C.L. was a few inches taller and 10 pounds heavier than Wilder, C.L. had never been in a fight before and was only 17. C.L. testified that he had tried to get up, but was able to get only onto his elbows. C.L.'s vision began to darken as Wilder continued pummeling his head, so C.L. reached into his pocket for his pocket knife. In addition to his waning consciousness, C.L. was unsure when Wilder would stop hitting him because Wilder had been drinking. C.L. also thought that more than one person was holding him down or punching him because he could not get up.

**{¶ 8}** C.L. unfolded his knife and thrust it in the general direction of Wilder. Wilder exclaimed that C.L. was "trying to poke him," but continued punching C.L. in the

3

head.  After several thrusts of the knife, Wilder ceased the beating, and C.L. got up and ran to his truck.

{¶ 9}   As C.L. attempted to leave, Scott Walraven and his son assaulted C.L. in his truck.  Scott Walraven grabbed C.L.'s shirt and punched him in the face several times.  C.L. tried to kick him away, to no avail.  Finally, Scott Walraven released C.L., who immediately started his truck and drove home.

{¶ 10} In the aftermath, Wilder had made his way to the garage and collapsed. Several of C.L.'s swipes with the knife had connected with Wilder's legs.  One of them had cut Wilder's femoral artery, which proved fatal.

{¶ 11} Washington County Deputy Sheriff Brian Lockhart interviewed C.L. early the next morning.  Lockhart observed bruises on C.L., scrapes on his hands and fingers consistent with being on the ground, and swelling of C.L.'s head.  Lockhart listened to C.L.'s version of the events, which matched his later in-court testimony.

{¶ 12} Several days later, C.L. was continuing to have dizzy spells and visited a doctor.  C.L. learned he had suffered a concussion.

{¶ 13} The state charged C.L. with negligent homicide in violation of R.C. 2903.05.  C.L. proceeded with a trial to the court.  The attorneys and the trial court agreed that the facts were uncontested.  C.L. never disputed that his actions resulted in Wilder's death.  The outcome was to turn upon whether C.L. had proved self-defense.

{¶ 14} The trial court acknowledged that C.L. was not at fault in creating the situation that led to Wilder's death.  Wilder had thrown the first punch.  The trial court, however, took issue with C.L.'s failure to fight back.  Despite C.L.'s testimony to the

4

contrary and no conflicting testimony on the point, the trial court found that C.L. did not try to get up while Wilder beat him.

{¶ 15} The trial court was also troubled by C.L.'s using a knife when Wilder was using only his fists. "At no time did [C.L.] attempt to get up, or even fight back with his arms and fists." "The use of the knife by [C.L.] was so grossly disproportionate to the perceived threat and was not warranted under the circumstances * * *. He was not in imminent danger of death or great bodily harm such that the use of the knife was his only means of escape."

{¶ 16} Thus, the trial court found that C.L. had not proved self-defense and adjudged him a delinquent child. C.L. now appeals.

ASSIGNMENTS OF ERROR

I.    [C.L.] proved by a preponderance of the evidence that he acted in self-defense; therefore, the juvenile court erred when it adjudicated him delinquent of negligent homicide.

II.    [C.L.'s] adjudication of negligent homicide was supported by insufficient evidence, and is against the manifest weight of the evidence.

{¶ 17} Although C.L. lists two assignments of error, they are intertwined. First, C.L. does not address the applicable standard of review for the first assignment of error. Second, C.L. makes two separate arguments in his second assignment of error. Overall, he argues that the state presented insufficient evidence to convict him of negligent homicide, and the trial court's judgment, convicting him because he did not establish self-defense, was against the manifest weight of the evidence. Thus, we consider appellant's assignments of error together.

5

Standard of Review

{¶ 18} " 'When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction.' *State v. Puckett* [191 Ohio App.3d 747], 2010-Ohio-6597, at ¶ 34. 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' Id., quoting *State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶ 9, in turn, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462, 1997 WL 600669. Therefore, we first consider whether [appellant's conviction is] against the manifest weight of the evidence." (Footnote omitted.) *State v. Leslie,* 4th Dist. Nos. 10CA17, and 10CA18, 2011-Ohio-2727, at ¶ 15. See also *State v. Bostwick*, 4th Dist. No. 10CA3382, 2011-Ohio-3671, at ¶ 10.

{¶ 19} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown,* 4th Dist. No. 09CA3, 2009-Ohio-5390, at ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court "may not reverse a conviction when there is substantial evidence upon which the [trier of fact] could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991),

6

citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), at paragraph two of the syllabus.

{¶ 20} We must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier,* 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995), citing *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). The trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

Legal Analysis

{¶ 21} R.C. 2903.05(A) provides, "No person shall negligently cause the death of another * * * by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code." R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 22} However, even if the state had proven the elements of negligent homicide, appellant could not be convicted if he had demonstrated that he acted in self-defense. "Self-defense is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.' " *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, at

¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 1997-Ohio-269, 673 N.E.2d 1339 (1997), and citing R.C. 2901.05.

**{¶ 23}** "[T]he second element of self-defense is a combined subjective and objective test." *Thomas* at 330. The person's belief must be objectively reasonable under the circumstances, and he must subjectively believe he needed to resort to force to defend himself. *Thomas* at 330-331. Regarding the subjective component, " '[a] nervous, timid, easily frightened individual is not measured by the same standard that a stronger, calmer, and braver man might be.' " *State v. Cope* (1946), 78 Ohio App. 429, 438, 67 N.E.2d 912, quoting *Nelson v. State* (1932), 42 Ohio App. 252, 181 N.E. 448, citing *State v. Sheets* (1926), 115 Ohio St. 308, 152 N.E. 664.

**{¶ 24}** Moreover, we have stated, "A defendant is privileged to use only that force that is reasonably necessary to repel the attack." *State v. Hendrickson*, 4th Dist. No. 08CA12, 2009-Ohio-4416, at ¶ 23, citing *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990), citing *State v. McLeod*, 82 Ohio App. 155, 157, 80 N.E.2d 699 (1948). That is, a person cannot continue to use force against the original aggressor once the imminent danger of death or serious bodily injury dissipates; the defender cannot become the aggressor. In *Hendrickson*, the defendant was stabbed by his ex-girlfriend, but he then disarmed her and stabbed her 14 times in the neck, heart, lung, abdomen, hip, and shoulder. The ex-girlfriend also had defensive wounds, indicating that once the defendant had disarmed her, he became the aggressor and was not acting in self-defense when he killed her. Thus, he was not entitled to claim self-defense.

8

{¶ 25} Finally, "[t]he elements of self-defense are cumulative, and if defendant fails to prove *any one* of the elements by a preponderance of the evidence, he fails to demonstrate that he acted in self-defense." (Emphasis sic.) *Hendrickson* at ¶ 23, citing *State v. Cassano,* 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 72, citing *State v. Jackson* (1986), 22 Ohio St.3d 281, 284, 490 N.E.2d 893.

{¶ 26} Here, we find that C.L. proved the elements of self-defense by a preponderance of the evidence. First, the trial court explicitly found that C.L. was not at fault in creating the violent situation, as Wilder threw the first punch.

{¶ 27} Second, C.L. possessed a bona fide (good faith) belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force. Subjectively, C.L. testified that he had been scared and panicked because he had never been in a fight before. C.L. also testified that his consciousness was waning and that his vision was starting to go dark. C.L. testified that he had tried to get up, but was able to get only onto his elbows, as Wilder was continually pummeling his head. Further, C.L. knew that Wilder had been drinking that evening, and given the way Wilder was attacking him, C.L. was unsure whether Wilder would stop hitting him. Thus, C.L. had an honest, bona fide belief that he was in imminent danger of death or serious bodily injury.

{¶ 28} Objectively, the situation was more serious than the trial court acknowledged. Wilder, an intoxicated 240-pound football player, was beating C.L. in the head repeatedly. A blow to a person's head can be fatal, even if the attacker uses only his fists. See *State v. Smith*, 4th Dist. No. 06CA2893, 2007-Ohio-1884 (affirming convictions for felonious assault and involuntary manslaughter when defendant landed

a single closed-fist blow to the victim's head); *State v. Brown*, 10th Dist. No. 03AP-130, 2004-Ohio-2990, at ¶ 87-88 (affirming conviction for attempted murder where defendant had repeatedly struck the victim with his fists). Regardless of C.L.'s size, he was at a disadvantage when he was blind-sided and knocked to the ground, followed by a blitzkrieg of blows to his head. It is not objectively unreasonable to foresee serious injury, or even death, in this particular scenario.

{¶ 29} Concerning C.L.'s use of force, he testified that he had tried to get up and had tried to defend himself, to no avail. While the trial court stated that C.L. had made no attempt to extricate himself from the situation, the evidence demonstrates the opposite. The trial court cannot fault C.L. for not attempting to fight back with his fists when the testimony revealed that C.L. had never been in a fight—he did not know how to intelligently fight back—and C.L. testified that he tried to escape. The law does not require one who is in fear of death or serious bodily harm to attempt to use nondeadly force first, wasting precious seconds and further imperiling himself. Thus, C.L.'s fear of death or serious bodily injury was objectively and subjectively reasonable.

{¶ 30} Third, C.L. did not violate any duty to retreat or avoid the danger. C.L. did not instigate the fight. He did everything in his power to leave. Once Wilder stopped hitting him, C.L. immediately ran to his truck to leave. Even after receiving a second beating from Scott Walraven, C.L.'s first action was to drive away.

{¶ 31} Finally, C.L.'s use of force was not grossly disproportionate to the force that Wilder had used. As explained above, C.L. did not use more force than was necessary to repel the attack. C.L.'s use of the knife was congruent with Wilder's

attack: once the beating ceased, the use of the knife ceased.  C.L. never became the aggressor.  Compare *Hendrickson*, 2009-Ohio-4416.

**{¶ 32}** Again, the trial court was obviously troubled by C.L.'s introducing a knife into a fistfight.  But this was not an orderly fight where the Queensberry Rules applied, the participants greeted each other beforehand, squared up to each other, and fought a clean fight.  Wilder ambushed C.L. with an unseen punch and knocked him to the ground.  Wilder then kept C.L. on the ground as he beat C.L.'s head.

**{¶ 33}** "[T]he law of self-defense does not distinguish between the weapons used to defend oneself but only between deadly force and non-deadly force.  Provided that a person is justified in using deadly force, the defender's choice of weapon is largely irrelevant, be it a gun or the defender's fists.  We therefore interpret the trial court's statements objecting to [C.L.'s] use of a [knife] as denying him the right to use deadly force." *State v. Miller*, 149 Ohio App.3d 782, 2002-Ohio-5812, 778 N.E.2d 1103, at ¶ 6.

**{¶ 34}** Other jurisdictions have reached similar results in similar situations.  A bankruptcy court in Wisconsin, when determining whether a defendant's debt for the death of another was dischargeable, found that the teen had acted in self-defense. *In re Mathews*, (Bankr. E.D.Wis.2010), 433 B.R. 732.  Even though the defendant had driven to a party to fight another student, the court analyzed the defendant's actions at the time of the altercation.  The defendant's friends had abandoned him, leaving him in the middle of a crowd of drunken teenagers who were yelling for the two combatants to fight.  The other teenager was making intimidating gestures and then pushed the defendant.  "[S]urrounded by a large[,] hostile crowd of drunken teenagers from a rival high school, having been taunted and pushed, and hearing the crowd incite [the

11

decedent] to hit him, the Court finds that a 16-year old would reasonably believe that his life was in danger or that he would suffer grave bodily harm if he did not strike. That he struck only one blow is evidence of the reasonableness of the response." Id. at 737. Unfortunately, the defendant's single blow to the teen's head proved fatal.

{¶ 35} Likewise, the Court of Appeals of Minnesota reversed the assault convictions of a 15-year-old girl who had stabbed two persons after a mob of teenagers rushed the defendant and started hitting and kicking her. *In re K.M.M.N.* Minn.App.No. A03-759 (Mar. 16, 2004). A group of teenagers had assaulted the defendant the two previous days, and the assaults prompted her to bring a knife to the skating rink on the night in question. Although the appellate court described the defendant's decisions to go to a place where she was likely to be assaulted, to bring a weapon, and to fail to inform security that there may be an altercation as "irresponsible and defy adult common sense," they did not negate her claim of self-defense. The defendant was in serious danger when a mob of teenagers began assaulting her, and her response to wildly lash out with the knife was a reasonable response to such peril.

{¶ 36} Thus, we hold that C.L. proved self-defense by a preponderance of the evidence, and the trial court's decision was against the manifest weight of the evidence. Accordingly, we sustain C.L.'s second assignment of error and reverse the trial court's judgment. C.L. is ordered discharged.

Judgment reversed.

ABELE, KLINE, and MCFARLAND, JJ., concur.

12