[Cite as *Wesley v. Walraven*, 2013-Ohio-473.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY


LEONARD L. WESLEY, et al.,      :

    Plaintiffs-Appellants,      :    Case No.   12CA18

    vs.      :

JAMES WALRAVEN, et al.,      :    DECISION AND JUDGMENT ENTRY


    Defendants-Appellees.      :

_____

APPEARANCES:

COUNSEL FOR APPELLANTS:    James H. Banks, P.O. Box 40, Dublin, Ohio 43017

COUNSEL FOR APPELLEES:    John E. Triplett, Jr., and Daniel P. Corcoran, THEISEN
                          BROCK, 424 Second Street, Marietta, Ohio 45750

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 2-5-13
ABELE, J.

{¶ 1}   This is an appeal from a Washington County Common Pleas Court summary judgment in favor of Todd and Joanna Knapp, defendants below and appellees herein.   The trial court determined that appellees are not liable for the death of LaMarr Wilder, who attended a party at appellees' home that another couple, James and Shenandoah Walraven, hosted.

{¶ 2}   Leonard L. Wesley, Individually and as Administrator of the Estate of Lamarr R. Wilder, plaintiff below and appellant herein, assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN CONSIDERING THE AFFIDAVIT OF DEFENDANT-APPELLEE JOANNA KNAPP IN SUPPORT OF DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF-APPELLANT'S MOTION TO COMPEL DISCOVERY AND TO STRIKE SAID AFFIDAVIT."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN REFUSING TO CONSIDER THE AFFIDAVIT OF DETECTIVE HAEGLE AND THE DOCUMENTS SUBMITTED BY PLAINTIFF-APPELLANT IN OPPOSITION TO DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF-APPELLANT'S CLAIMS, SUCH THAT THE JUDGMENT BELOW MUST BE REVERSED."

{¶ 3} This case arises out of a very unfortunate and sad stabbing incident that occurred at appellees' home where the Walravens hosted a combined high-school graduation and birthday party for their daughter while appellees were out of town. Appellees agreed to the arrangement, but informed the Walravens of certain restrictions for the party. Appellees advised the Walravens that no one under the age of twenty-one would be permitted to consume alcohol and that no one under the age of eighteen could attend the party. Appellees did not purchase any alcohol to be consumed at the party.

{¶ 4} C.L. attended the party but did not drink any alcohol.[1] As C.L. and two of his friends sat in a car, three unknown males approached and began to beat on the roof of the car and

---

[1] The great majority of the underlying facts can be found in In re C.L., 197 Ohio App.3d 514, 2011-Ohio-6892, 968 N.E.2d 34, (4th Dist.), which we have quoted liberally.

demanded that C.L. and his friends exit so they could fight.   One of C.L.'s friends exited the

driver's door and asked why there was going to be a fight.   C.L. exited the passenger door to stand

near his friend.

{¶ 5}   Once outside the car, C.L. and his friends recognized the male antagonists as Scott

Walraven's son, T.C., and LaMarr Wilder. As C.L.'s friend was tried to explain that he had no

intention to fight, T.C. punched C.L.'s friend in the back of the head.   Wilder then punched C.L.

in the temple and knocked him to the ground.   The Walravens' son punched C.L.'s second friend

in the face, dazing him and possibly rendering him unconscious.

{¶ 6}   Once C.L. was on the ground, he rolled to his stomach and Wilder began to pummel

his head and neck.   Wilder was 5'10", nearly 240 pounds, a football player, and 19 years old.

C.L. was a few inches taller and 10 pounds heavier than Wilder, but C.L. had never been in a fight

and was 17.   C.L. testified that he tried to get up, but was able to get only onto his elbows.   C.L.'s

vision began to darken as Wilder continued to pummel his head, so C.L. reached into his pocket

for his pocket knife.   In addition to his waning consciousness, C.L. was unsure when Wilder

would stop hitting him because Wilder had been drinking.   C.L. also thought that more than one

person was holding him down or punching him because he could not get up.

{¶ 7}   After C.L. unfolded his knife, he thrust it in Wilder's general direction.   Wilder

exclaimed that C.L. was "trying to poke him," but continued to punch C.L. in the head.   After

several thrusts of the knife, Wilder ceased the beating.   C.L. then got up and ran to his truck.

{¶ 8}   As C.L. attempted to leave, Scott Walraven and his son assaulted C.L. in his truck.

Scott Walraven grabbed C.L.'s shirt and punched him in the face several times.   C.L. tried to kick

him away, to no avail.   Finally, Scott Walraven released C.L., who immediately started his truck

and drove home.

{¶ 9} In the aftermath, Wilder made his way to the garage and collapsed. Several of C.L.'s swipes with the knife had connected with Wilder's legs and one cut Wilder's femoral artery, which proved fatal.

{¶ 10} On September 23, 2010, appellant filed a wrongful death complaint against the Walravens, appellees, and C.L. The court subsequently entered default judgments against C.L. and the Walravens.

{¶ 11} On December 2, 2011, appellees requested summary judgment and asserted that no genuine issues of material fact remained concerning their liability for the decedent's death.

{¶ 12} On January 6, 2012, appellant filed a motion to compel appellees to provide discovery and a motion to strike Mrs. Knapp's affidavit. On that same date, appellant filed his opposition memorandum and attached investigative reports taken during the investigation into Wilder's death and a search warrant affidavit.

{¶ 13} Subsequently, appellees filed a motion to strike the exhibits attached to appellant's memorandum.

{¶ 14} On February 6, 2012, the trial court overruled appellant's motion to compel, partially overruled his motion to strike Mrs. Knapp's affidavit, granted appellees' motion to strike the documents attached to appellant's opposition memorandum, and granted appellees summary judgment. On March 21, 2012, the court entered a final judgment entry and granted appellees summary judgment. This appeal followed.

{¶ 15} Appellant's three assignments of error challenge the propriety of the trial court's summary judgment decision, thus, for ease of analysis we have combined them for review.

{¶ 16} In his first assignment of error, appellant argues that the trial court erred by denying his motion to strike Mrs. Knapp's affidavit. Appellant asserts that the trial court should have stricken the affidavit because it (1) is not based upon personal knowledge, (2) contradicts her deposition testimony and interrogatory answers, and (3) contains hearsay and other inadmissible information. Within his first assignment of error, appellant also contends that the trial court erred by overruling his motion to compel discovery and to stay ruling on appellees' summary judgment until appellees provided proper discovery responses.

{¶ 17} In his second assignment of error, appellant argues that the trial court erred by striking the documents he submitted in opposition to appellees' summary judgment motion.

{¶ 18} In his third assignment of error, appellant contends that the trial court improperly entered summary judgment in appellees' favor. Appellant asserts that genuine issues of material fact remain as to whether appellees are liable for the decedent's death.

A

SUMMARY JUDGMENT STANDARD

{¶ 19} Appellate courts conduct a de novo review of trial court summary judgment decisions. E.g., Troyer v. Janis, 132 Ohio St.3d 229, 2012-Ohio-2406, 971 N.E.2d 862, ¶6; Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. E.g., Brown v. Scioto Bd. of Commrs., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); Morehead v. Conley, 75 Ohio App.3d 409, 411–12, 599 N.E.2d 786 (1991). To determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as

well as the applicable law.    Civ. R. 56(C) provides in relevant part:

> * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.    No evidence or stipulation may be considered except as stated in this rule.    A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 20}  Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.   E.g., Smith v. McBride, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶12; New Destiny Treatment Ctr., Inc. v. Wheeler, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶24; Vahila v. Hall, 77 Ohio St.3d 421, 429–30, 674 N.E.2d 1164 (1997).

B

SUMMARY JUDGMENT EVIDENCE

{¶ 21}  Civ.R. 56(C) sets forth an exclusive list of evidentiary materials that a trial court may consider when ruling upon a summary judgment motion.   Emerson Family Ltd. Partnership v. Emerson Tool, LLC, 9th Dist. No. 26200, 2012-Ohio-5647, ¶14, citing Spier v. American Univ. of the Caribbean, 3 Ohio App.3d 28, 29, 443 N.E.2d 1021 (1981).   The rule prohibits a trial court from considering any evidence or stipulation except the "pleadings, depositions, answers to

interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact."  Civ.R. 56(C).  Accord Davis v. Eachus, 4th Dist. No. 04CA725, 2004-Ohio-5720, ¶36; Wall v. Firelands Radiology, Inc., 106 Ohio App.3d 313, 334, 666 N.E.2d 235 (6th Dist. 1995).  Furthermore, when ruling on a summary judgment motion, a court may consider only evidence that would be admissible at trial.  Pennisten v. Noel, 4th Dist. No. 01 CA669, 2002 WL 254021 (Feb. 2, 2000), at *2.

{¶ 22} If a party submits evidence that does not fall within Civ.R. 56(C)'s parameters, the opposing party may file a motion to strike the improperly-submitted evidence.  The determination of a motion to strike is within a court's broad discretion.  State ex rel. Dawson v. Bloom–Carroll Local School Dist., 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶23.  Consequently, absent an abuse of discretion, an appellate court will not disturb a trial court's ruling regarding a motion to strike.  State ex rel. Mora v. Wilkinson, 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶10.  A decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable.  State ex rel. Striker v. Cline, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶11.  Moreover, when applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court.  E.g., Berk v. Matthews, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

1

Affidavits

{¶ 23} Appellant asserts that the trial court erred when it refused to strike Mrs. Knapp's affidavit.  Appellant argues that the court should have stricken Knapp's affidavit because it (1) is not based upon personal knowledge, (2) contradicts her deposition testimony and interrogatory

answers, and (3) contains inadmissible hearsay.

{¶ 24} Civ.R. 56(E) sets forth the requirements for affidavits submitted in support of, or in opposition to, a summary judgment motion. The rule states that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated in the affidavit." Affidavits not based upon personal knowledge, or that fail to set forth facts that would be admissible in evidence, are subject to a motion to strike. Samadder v. DMF of Ohio, Inc., 154 Ohio App.3d 770, 2003-Ohio-5340, 798 N.E.2d 1141, ¶17 (10th Dist.).

{¶ 25} "Personal knowledge" is "'[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" Bonacorsi v. Wheeling & Lake Erie Ry. Co., 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶26, quoting Black's Law Dictionary (7th Ed.Rev. 1999) 875. It is "knowledge of factual truth which does not depend on outside information or hearsay." Firelands Radiology, 106 Ohio App.3d at 335. E.g., Curren v. Greenfield, 4th Dist. No. 11CA30, 2012-Ohio-4688, ¶9.

{¶ 26} Additionally, a moving party generally may not submit an affidavit that contradicts that party's prior deposition testimony in order to defeat or to obtain a summary judgment. Turner v. Turner, 67 Ohio St.3d 337, 617 N.E.2d 1123 (1993), paragraph one of the syllabus ("When a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her earlier deposition testimony, summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by the trier of fact."). "In other words, a summary judgment movant may not benefit from changing a deposition with a later sworn statement." Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶22.

{¶ 27} In the case at bar, we do not believe that the trial court's refusal to strike Mrs. Knapp's affidavit in its entirety constitutes an abuse of discretion. Rather, the trial court reasonably determined to strike those portions that are not based upon personal knowledge, and to consider the portions based upon personal knowledge. Simply because an affidavit contains both admissible and inadmissible information does not mean that a trial court must refuse to consider the entire affidavit. Instead, a court may exercise its discretion and strike only those inadmissible portions. Firelands Radiology, 106 Ohio App.3d at 335 ("Any individual statements which are inadmissible under the evidence rules should be excluded from an affidavit which otherwise complies with Civ.R. 56.").

{¶ 28} We further disagree with appellant that the trial court should have refused to consider Mrs. Knapp's affidavit because, according to appellant, it contradicts her prior deposition testimony. While we agree with the principle that in order to obtain a summary judgment, a moving party cannot submit an affidavit that contradicts that party's prior deposition testimony, in the case sub judice appellant failed to demonstrate that any statement in the affidavit factually contradicts her deposition. Appellant asserts that Knapp's affidavit statement that she prohibited alcohol consumption conflicts with her deposition testimony that she was not at the party. He claims that because Knapp was not present at the party, she could not have prohibited alcohol consumption. However, Knapp's two statements do not rise to the level of a contradiction. Mrs. Knapp admits that she was not present at the party. She further stated, however, that she prohibited alcohol consumption. The facts reveal that she did not prohibit alcohol consumption by maintaining a physical presence at the property and personally informing the attendees that there would be no alcohol consumption, but, instead, prohibited alcohol consumption by advising the

party hosts, the Walravens, that "no alcoholic beverages could be consumed by any person under the age of 21." Appellant apparently believes that to prohibit alcohol consumption requires a physical presence at the event where the alcohol is being consumed. He did not, however, cite authority to support this supposition. We, therefore, decline to find that Knapp's statement that she prohibited alcohol consumption is an actual contradiction of her deposition testimony that she was not present at the party. Instead, one statement supplements and explains the other.

{¶ 29} Accordingly, we disagree with appellant that the trial court erred by denying his motion to strike Mrs. Knapp's affidavit.

2

Documentary Evidence

{¶ 30} Appellant next argues that the trial court's decision to grant appellees' motion to strike the documents that he submitted in opposition to appellees' summary judgment motion constitutes reversible error.

{¶ 31} Appellant attached to his opposition memorandum unauthenticated documents from the police investigation into the decedent's death, including two "narrative supplements" and a search warrant affidavit. However, the proper method to introduce evidentiary materials that Civ.R. 56(C) does not specifically authorize is to incorporate them by reference into a properly framed affidavit. Martin v. Central Ohio Transit Auth., 70 Ohio App.3d 83, 89, 590 N.E.2d 411 (10th Dist. 1990). Accord Discover Bank v. Combs, 4th Dist. No. 11CA25, 2012-Ohio-3150, ¶17. Civ.R. 56(E)'s requirement that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit with a statement contained in the affidavit that the copies are true and accurate reproductions. State ex rel. Corrigan v. Seminatore,

66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981); Discover Bank.

{¶ 32} In the case sub judice, we do not believe that appellant properly incorporated the documents by reference.   Because no one swore that the documents are true and accurate reproductions, the trial court's refusal to consider them does not constitute an abuse of discretion. Additionally, appellant's documents are inadmissible hearsay.   "Police reports are generally inadmissible hearsay."   State v. Hall, 8th Dist. No. 96680, 2012-Ohio-266,   ¶12, citing State v. Leonard, 104 Ohio St.3d 54, 2004–Ohio–6235, 818 N.E.2d 229, and State v. Ward, 15 Ohio St.3d 355, 358, 474 N.E.2d 300 (1984).   "A police report is not admissible under the business-records exception in Evid.R. 803(6), if it recites hearsay statements received by the officer from others." State v. Daniel, 2nd Dist. No. 24151, 2011–Ohio–2821, ¶15; State v. Richcreek, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442 (6th Dist.), ¶74 (holding that police records, including a search warrant and attached affidavit constituted inadmissible hearsay).

{¶ 33} In Stevenson v. Prettyman, 193 Ohio App.3d 234, 2011-Ohio-718, 951 N.E.2d 794 (8th Dist.), ¶¶27-28, the court held that police records are not listed as Civ.R. 56(C) evidence that a trial court may consider when ruling on a summary judgment motion.   The court stated:

> "In Butler v. Young, (Jan. 14, 1999), 8th Dist. No. 73549, 1999 WL 13986, this court explained: 'Police reports and private investigator's statements are not materials authorized by Civ.R. 56(C) for consideration on a motion for summary judgment.   Moreover, plaintiffs did not offer evidence to authenticate these documents or to certify that they were true copies of what they were purported to be. Such authentication is a condition precedent to admissibility.   Evid.R. 901. Although the police report is a public record, the report was not self-authenticating because the document was not certified as a true copy of an official public record. Evid.R. 902; Civ.R. 44.   Accordingly, the trial court properly refused to consider these materials.   Id.'
> We further noted in Butler that 'even if plaintiffs had properly authenticated the police report, its contents were hearsay and were not admissible under Evid.R. 803(8) as a public record and report.   Petti v. Perna, (1993), 86 Ohio App.3d 508

[621 N.E.2d 580].   The report was recorded by an officer who responded to the scene after the collision, was not based on his own personal observations, and merely collected statements by other witnesses.   Id.'"

**{¶ 34}** Similarly, in the case at bar, appellant did not authenticate the police records that appellant attached to his opposition memorandum.   Moreover, the records contain the statements of various witnesses and report activities based upon what others saw, not upon what the officers personally witnessed or observed.   Nelson v. Ford Motor Co., 145 Ohio App.3d 58, 68, 761 N.E.2d 1099, 1107 (11th Dist. 2001) (holding that "[s]tatements made to a police officer by a person involved in an automobile accident and incorporated into the officer's report are inadmissible hearsay").   Therefore, we do not believe that the trial court abused its discretion when it declined to consider the documents appellant attached to his opposition memorandum.

**{¶ 35}** Consequently, we reject appellant's argument that the trial court erred by granting appellees' motion to strike the documents he submitted in opposition to appellees' summary judgment motion.

C

MOTION TO COMPEL DISCOVERY

**{¶ 36}** Within his first assignment of error, appellant further argues that the trial court erred by denying his motion to compel discovery and to stay the proceedings until appellees provided additional discovery.

**{¶ 37}** We first observe that appellant cited no legal authority to support his argument that the trial court erred by denying his motion to compel.   Under App.R. 12(A)(2), an appellate court may disregard an assignment of error if an appellant fails to argue the assignment of error as specified in App.R. 16(A).   App.R. 16(A)(7) requires an appellant's brief to include argument and

law, "containing the contentions of appellant with respect to each assignment of error presented for review * * * with citations to the authorities, statutes, and parts of the record on which appellant relies."   When an appellant fails to cite any legal authority to support an assigned error, the duty does not fall to the court to conduct a search for legal authority to support that assigned error.   As we explained in May v. May, 4ᵗʰ Dist. No. 11CA910, 2012-Ohio-2348, ¶21:

> """If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out."'   Thomas v. Harmon, 4ᵗʰ Dist. No. 08CA17, 2009–Ohio3299, ¶14, quoting State v. Carman, 8ᵗʰ Dist. No. 90512, 2008–Ohio–4368, ¶31.   '"It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal."'   (Alteration sic.)   Catanzarite v. Boswell, 9ᵗʰ Dist. No. 24184, 2009–Ohio–1211, ¶16, quoting Kremer v. Cox, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9ᵗʰ Dist. 1996). Therefore, '[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions.'   Frye v. Holzer Clinic, Inc., 4ᵗʰ Dist. No. 07CA4, 2008–Ohio–2194, ¶12.   Accord Coleman v. Davis, 4ᵗʰ Dist. No. 10CA5, 2011–Ohio–506, ¶13; Oldacre v. Oldacre, 4ᵗ Dist. No. 08CA3073, 2010–Ohio–1651, ¶ 35 (Kline, J., with one judge concurring in judgment only); see App.R. 12(A)(2).'"

{¶ 38}   In the case at bar, the failure to comply with App.R. 16(A)(7) is fatal to his assertion

that the trial court erred by denying his motion to compel and to stay the proceedings.   Appellant

did not cite any authority to support his argument that the trial court should have granted his

motion to compel appellees to provide further responses to his request for interrogatories.

Consequently, we decline to address the argument.   Further, we simply point out that we reviewed

the trial court's February 6, 2012 ruling that overruled appellant's motion to compel and find

nothing to suggest that the trial court abused its discretion.   E.g., State ex rel. The V Cos. v.

Marshall, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998); Nemcek v. Northeast Ohio Regional

Sewer Dist., 8th Dist. No. 98431, 2012-Ohio-5516, ¶7; Entingh v. Old Man's Cave Chalets, Inc., 4th

Dist. No. 08CA14, 2009-Ohio-2242, ¶13.   We therefore reject appellant's argument that the trial

court erred by overruling his motion to compel discovery and to stay the proceedings until

appellees provided further responses to his discovery requests.

D

NO GENUINE ISSUES OF MATERIAL FACT REMAIN

{¶ 39}  In his third assignment of error, appellant asserts that the trial court erred by

entering summary judgment in appellees' favor.   Appellant contends that genuine issues of

material fact remain regarding whether appellees are liable for the decedent's death as social hosts

under R.C. 4301.69(B), or whether appellees negligently entrusted their home to the Walravens.

{¶ 40}  A successful negligence action requires a plaintiff to establish that: (1) the

defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a

direct and proximate result of the defendant's breach, the plaintiff suffered injury.   E.g., Texler v.

D.O. Summers Cleaners, 81 Ohio St.3d 677, 680, 693 N.E.2d 217 (1998); Jeffers v. Olexo, 43

Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).   If a defendant points to evidence to illustrate that

the plaintiff will be unable to prove any one of the foregoing elements, and if the plaintiff fails to

respond as Civ.R. 56 provides, the defendant is entitled to judgment as a matter of law.   Lang v.

Holly Hill Motel, Inc., 4th Dist. No. 06CA18, 2007-Ohio-3898, ¶19, affirmed, 122 Ohio St.3d 120,

2009-Ohio-2495, 909 N.E.2d 120.

1

Social Host Liability

{¶ 41}  R.C. 4301.69(B) sets forth the obligation of a "social host" as it relates to underage

consumption of alcohol and states:

> (B) No person who is the owner or occupant of any public or private place
> shall knowingly allow any underage person to remain in or on the place while
> possessing or consuming beer or intoxicating liquor, unless the intoxicating liquor
> or beer is given to the person possessing or consuming it by that person's parent,
> spouse who is not an underage person, or legal guardian and the parent, spouse who
> is not an underage person, or legal guardian is present at the time of the person's
> possession or consumption of the beer or intoxicating liquor.
>      An owner of a public or private place is not liable for acts or omissions in
> violation of this division that are committed by a lessee of that place, unless the
> owner authorizes or acquiesces in the lessee's acts or omissions.

This statute creates a duty on the part of a social host to refrain from serving alcohol or intoxicating

liquors to an underage person.   Mitseff v. Wheeler, 38 Ohio St.3d 112, 114, 526 N.E.2d 798

(1988).   Violating the statute constitutes negligence per se and thus establishes the duty and breach

elements of a negligence action.   Huston v. Konieczny, 52 Ohio St.3d 214, 218, 556 N.E.2d 505

(1990).   R.C. 4301.69(B), however, is not a strict liability statute.   See Lesnau v. Andate Ent.,

Inc., 93 Ohio St.3d 467, 473, 756 N.E.2d 97 (2001) (observing that R.C. 4301.69(A) imposes strict

liability but that R.C. 4301.69(B) requires mens rea of knowledge).   Instead, in order for liability

to arise, the injured person must demonstrate that the social host possessed actual, not constructive, knowledge that underage alcohol consumption or possession was occurring on the social host's premises.  STJ Entertainment L.L.C. v. Liquor Control Com'n, 10th Dist. No. 01AP-610, 2001 WL 1608240 (Dec. 18, 2001), *4 (explaining that Lesnau did not impose a constructive knowledge standard for R.C. 4301.69(B) liability).

{¶ 42} In the case sub judice, we do not agree with appellant that genuine issues of material fact remain as to whether appellees possessed actual knowledge that underage alcohol consumption or possession was occurring at their home.   Appellees stated that they did not know underage alcohol consumption or possession occurred at their home and that they specifically advised the Walravens to permit no underage alcohol consumption at the party.   Mrs. Knapp stated that she informed the Walravens that they could host their daughter's graduation party, but only if the Walravens complied with certain restrictions.   Knapp explained that she told the Walravens that no one under the age of twenty-one could consume alcohol and that no one under the age of eighteen could be present.   Knapp stated that the Walravens assured her that no one under the age of eighteen would attend the party.   None of the foregoing facts shows that appellees possessed actual knowledge that underage alcohol consumption or possession occurred at their home. Appellant failed to respond with proper Civ.R. 56(C) evidence to dispute these facts. Consequently, appellant failed to establish the existence of a material fact regarding an essential element of his negligence claim under a social host theory of liability, i.e., whether appellees violated the duty set forth in R.C. 4301.69.

{¶ 43} Moreover, we observe that appellees' conduct in loaning the Walravens their home for the party is similar to an owner leasing premises.   R.C. 4301.69(B) does not impose liability

upon the owner of the leased premises unless the owner acquiesced in the prohibited conduct.   The

statute reads: "An owner of a public or private place is not liable for acts or omissions in violation

of this division that are committed by a lessee of that place, unless the owner authorizes or

acquiesces in the lessee's acts or omissions."   Assuming, arguendo, that this statute applies to

appellees' conduct in loaning their house to the Walravens, in the case sub judice no evidence

exists that appellees acquiesced in the Walravens' R.C. 4301.69(B) violation.

{¶ 44} The trial court, therefore, properly entered summary judgment in appellees' favor

under the social host theory of liability.

2

Negligent Entrustment

{¶ 45} Appellant further seeks to impose liability upon appellees using a negligent

entrustment theory.   Appellant alleges that appellees negligently entrusted their home to the

Walravens.

> "'[T]he Restatement of Torts provides that it is negligence to permit another person 'to use a thing * * * which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.'   Restatement of the Law 2d, Torts, Section 308 (1965)."

Rice v. Kanoza, 1st Dist. No. C-110595, 2012-Ohio-2581, ¶12.

> "The theory of negligent entrustment as a basis for liability arises from the principle that '[a]nyone with normal experience is required to have knowledge of the traits and habits of * * * other human beings, and to govern accordingly.' Prosser and Keeton On Torts, Fifth Ed., Chp. 5, p. 197-198.   To the extent that the negligence of another causes the harm involved, '[t]he duty arises * * * only where a reasonable person would recognize the existence of an unreasonable risk of harm to others through the intervention of such negligence.' Id., at p. 199.
> To 'entrust' is '[t]o give over to another something after a relation of trust and confidence has been established.   To deliver something to another in trust or to

commit something to another with a certain confidence regarding his care, use or disposal of it.'   Black's Law Dictionary, supra."

Deangelis v. Donley, 2nd Dist. No. 17223, 1999 WL 41888, *4 (Jan. 29, 1999).

{¶ 46} Deangelis involved facts that are similar to those in the case at bar.   In Deangelis, the plaintiff suffered an injury while at a party that twenty-one year old Riley Miles hosted at his parents' home while the parents were out of town.   Miles' parents specifically told him that he was not permitted to host a party.   The plaintiff filed a negligence complaint against, inter alia, Miles and his parents and alleged that Miles' parents negligently entrusted their home to Riley, their son.   The appellate court refused to impose liability under a negligent entrustment theory when the son violated the specific trust that the parents had placed in him, i.e., not to have a party. The court explained:

> "The evidence is undisputed that George and Barbara Miles specifically told their son that he was not to have a party at their home while they were away.   Thus, if the risk of the type of harm that Plaintiff Deangelis suffered was reasonably foreseeable to them, George and Barbara Miles acted according to except from any entrustment they conferred on their son the authority to hold a party in their home [sic].   The fact that he breached whatever limited or other trust they reposed in him does not demonstrate that, in fact, they reposed some other or broader form of trust that included holding the party at which Plaintiff Deangelis was injured.
>     Though the trial court erred when it granted summary judgment for the Defendants on the negligent entrustment claim because their son was an adult, the judgment itself was correct. Reasonable minds could not conclude other than that George and Barbara Miles did not entrust their property to their son to use for the purpose from which the Plaintiff's injuries proximately resulted.   In fact, that use was expressly unauthorized by them. Therefore, there is no basis from which their liability to the Plaintiff on a theory of negligent entrustment can be found, and the Defendants were entitled to summary judgment in their favor on their motion for that relief."

{¶ 47} Assuming, arguendo, that negligent entrustment of a home is a viable claim,[2] based

---

2   Appellees suggest that the negligent entrustment doctrine has no applicability to a person's home.   We find no

upon the rationale set forth in <u>Deangelis</u>, we conclude that no genuine issues of material fact remain regarding appellant's negligent entrustment claim.   As we stated above, the evidence demonstrates that appellees explicitly advised the Walravens that no one under the age of twenty-one could consume alcohol and also advised them that no one under the age of eighteen could attend the party.   Appellees imposed restrictions on the Walravens' use of their home, and the evidence shows that the Walravens breached those restrictions.   While appellees may have authorized the party, they did not authorize underage alcohol consumption.

{¶ 48}  Moreover, the risk of harm that ultimately befell the decedent is not the type of harm that a reasonable homeowner would expect to occur when permitting an individual to host a party at the homeowner's premises.   In the words of the Restatement, supra, it is not negligence to permit another person (the Walravens) to use a thing that is under the control of the actor (appellees' home), if the actor (appellees) does not know or should not know that such person (the Walravens) intends or is likely to use the thing to conduct himself in the activity (hosting a party) in such a manner as to create an unreasonable risk of harm (death or physical injury) to others.

3

Proximate Cause

{¶ 49}  Furthermore, even if genuine issues of material fact remain regarding whether appellees breached a duty imposed under the social host doctrine or negligent entrustment theory, no genuine issues of material fact remain as to whether those alleged breaches proximately caused the decedent's death.   We do not believe that any reasonable person could conclude that the

---

need to expressly resolve this issue.     Instead, we discuss it in the theoretical context only.     That is, if it applies, no genuine issues of material fact remain regarding the doctrine.

decedent's death proximately resulted from appellees' alleged violation of R.C. 4301.69(B) or appellees' alleged negligent entrustment of their home to the Walravens.

{¶ 50} "The rule of proximate cause 'requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act.'" Jeffers v. Olexo, 43 Ohio St.3d 140, 143, 539 N.E.2d 614 (1989), quoting Ross v. Nutt, 177 Ohio St. 113, 203 N.E. 118 (1964). "[I]n order to establish proximate cause, foreseeability must be found. * * * 'If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence * * *.'" Mussivand v. David, 45 Ohio St.3d 314, 321, 544 N.E.2d 265 (1989), quoting Mudrich v. Standard Oil Co., 153 Ohio St. 31, 39, 90 N.E.2d 859 (1950). "The standard test for establishing causation is the sine qua non or 'but for' test. Thus, a defendant's conduct is a cause of the event (or harm) if the event (or harm) would not have occurred but for that conduct; conversely, the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would have occurred regardless of the conduct. Prosser & Keeton, Law of Torts (5 Ed.1984) 266." Anderson v. St. Francis-St. George Hosp., Inc., 77 Ohio St.3d 82, 84-85, 671 N.E.2d 225 (1996). "'[L]egal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability.'" Johnson v. Univ. Hosp. of Cleveland, 44 Ohio St.3d 49, 57, 540 N.E.2d 1370 (1989), quoting Prosser & Keeton, Law of Torts (5 Ed.1984) 264, Section 41; see, also, Hester v. Dwivedi, 89 Ohio St.3d 575, 733 N.E.2d 1161 (2000).

{¶ 51} Ordinarily, proximate cause is a question of fact for the jury. Strother v.

Hutchinson, 67 Ohio St.2d 282, 288, 423 N.E.2d 467 (1981), citing Clinger v. Duncan, 166 Ohio

St. 216, 141 N.E.2d 156 (1957). However, "where no facts are alleged justifying any reasonable

inference that the acts or failure of the defendant constitute the proximate cause of the injury, there

is nothing for the jury [to decide], and, as a matter of law, judgment must be given for the

defendant.'" Kemerer v. Antwerp Bd. of Edn., 105 Ohio App.3d 792, 796, 664 N.E.2d 1380

(1995), quoting Case v. Miami Chevrolet Co., 38 Ohio App. 41, 45-46, 175 N.E.2d 224 (1930);

Vermett v. Fred Christian & Sons Co., 138 Ohio App.3d 586, 612, 741 N.E.2d 954 (6th Dist. 2000)

("While proximate cause is often a jury question, summary judgment is proper on this issue when

appellant has failed to meet his burden to produce evidence to challenge unfavorable evidence

already in the record.").

{¶ 52} Any break in the chain of causation will relieve the defendant of liability.

Leibreich, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993) ("[T]he existence of intervening and

superseding causes of injury can be a defense to actions brought under theories of both negligence

and strict liability in tort."). "A break will occur when there intervenes between an agency

creating a hazard and an injury resulting therefrom another conscious and responsible agency

which could or should have eliminated the hazard. However, the intervening cause must be

disconnected from the negligence of the first person and must be of itself an efficient, independent,

and self-producing cause of the injury." Berdyck v. Shinde, 66 Ohio St.3d 573, 584-585, 613

N.E.2d 1014 (1993) (citations omitted).

{¶ 53} The test to determine whether an "intervening act was foreseeable, and therefore a

consequence of the original negligent act, or whether the intervening act operates to absolve the

original actor * * * 'is whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor.'"  Liebreich, 67 Ohio St.3d at 269, quoting Cascone v. Herb Kay Co., 6 Ohio St.3d 155, 160, 451 N.E.2d 815 (1983).   "'The causal connection of the first act of negligence is broken and superseded by the second, only if the intervening negligent act is both new and independent.   The term 'independent' means the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence.   The term 'new' means that the second act of negligence could not reasonably have been foreseen.'"  R.H. Macy & Co., Inc. v. Otis Elevator Co., 51 Ohio St.3d 108, 111, 554 N.E.2d 1313 (1990), quoting 1 Ohio Jury Instructions, Section 11.30 (1983), quoted in Liebreich, 67 Ohio St.3d at 269-70.   Thus, the key determination "'whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence.'"  R.H. Macy, 51 Ohio St.3d at 110, quoting Mudrich v. Standard Oil Co., (1950), 153 Ohio St. 31, 90 N.E.2d 859, quoted in Liebreich, 67 Ohio St.3d at 270.   To be an intervening or superseding cause, the act must be unforeseeable in light of all the facts and circumstances.   Queen City Terminals, Inc. v. Gen. Am. Transp. Corp., 73 Ohio St.3d 609, 619-620, 653 N.E.2d 661 (1995); Volter v. C. Schmidt Co., Inc., 74 Ohio App.3d 36, 39, 598 N.E.2d 35 (1991).

{¶ 54} Like proximate cause, "the issue of intervening causation generally presents factual issues to be decided by the trier of fact.   The determination of intervening causation 'involves a weighing of the evidence, and an application of the appropriate law to such facts, a function normally to be carried out by the trier of facts."  Liebreich, 67 Ohio St.3d at 269 (citations

omitted); <u>Mark v. Mellott Mfg. Co., Inc.</u>, 106 Ohio App.3d 571, 587-588, 666 N.E.2d 631 (1995).

**{¶ 55}** In the case at bar, we do not believe that any reasonable person could conclude that death by allegedly criminal means is a natural and probable consequence of permitting individuals to borrow one's home for a high-school graduation and birthday party. We likewise do not believe that an individual being stabbed to death is a natural and probable consequence of a social host permitting underage alcohol consumption or possession on the host's premises. See <u>Pandey v. Banachowski</u>, 10th Dist. No. 11AP-459, 2011-Ohio-6830, ¶41, quoting <u>Federal Steel and Wire Corporation v. Ruhlin Construction Company</u>, 45 Ohio St.3d 171, 174, 543 N.E.2d 769 (1989) (stating that "'the law usually does not require the prudent person to expect the criminal activity of others'"). Furthermore, we believe that a reasonable person could only conclude that C.L.'s use of self-defense to repel the decedent's attack was an intervening and superseding cause. In the case sub judice, the ultimate cause of the decedent's death is so far-removed from any negligence that appellees may have committed that it would be manifestly unjust to impose legal responsibility.[3] Consequently, appellees cannot be held liable for the decedent's unfortunate death, and the trial court did not err by entering summary judgment in appellees' favor.

**{¶ 56}** Accordingly, based upon the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

---

[3] In fact, given our holding in <u>In re C.L.</u>, supra, one might state that the decedent's own conduct proximately caused his death and broke the chain of causation between any negligence appellees may have committed and his death.

**[Cite as *Wesley v. Walraven*, 2013-Ohio-473.]**

<u>JUDGMENT ENTRY</u>

It is ordered that the judgment be affirmed and that appellees recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Kline, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

<u>**NOTICE TO COUNSEL**</u>

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.